**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

| | |
|---|---|
| **THOMAS W. REDFORD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:21-cv-00096** |
| ) | |
| **EQUIFAX INFORMATION SERVICES, LLC,** ) | |
| **SERVE:  Corporation Service Company, Reg. Agent** ) | |
| **100 Shockoe Slip** ) | |
| **2nd Floor** ) | |
| **Richmond, VA  23219** ) | |
| ) | |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** ) | |
| **SERVE:  David N. Anthony, Reg. Agent** ) | |
| **TROUTMAN SANDERS, LLP** ) | |
| **1001 Haxall Point** ) | |
| **Richmond, VA 23219** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TRANS UNION, LLC,** ) | |
| **SERVE:  Corporation Service Company, Reg. Agent** ) | |
| **100 Shockoe Slip** ) | |
| **2nd Floor** ) | |
| **Richmond, VA 23219** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

_____

**COMPLAINT**

COMES NOW the Plaintiff, THOMAS W. REDFORD, by counsel, and for his complaint against each of the Defendants, alleges as follows:

**I.**

**PRELIMINARY STATEMENT**

1.      Defendants EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANS UNION, LLC have violated the Fair Credit

Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA"), by continuing to improperly report derogatory information regarding Plaintiff's home equity line of credit with SunTrust Bank (now known as Truist Bank), falsely indicating the account was included or discharged in bankruptcy, and by improperly reporting derogatory information regarding Plaintiff's credit account with Kay Jewelers, falsely indicating the account was charged off, instead of discharged in bankruptcy.

2.     Defendants EXPERIAN INFORMATION SOLUTIONS, INC., and TRANS UNION, LLC also violated the FCRA by continuing to improperly report derogatory information regarding Plaintiff's mortgage with Seterus, Inc., falsely indicating the account was included or discharged in bankruptcy.

3.     Defendants continued to report inaccurate and derogatory information on Plaintiff's credit regarding these accounts even after receiving from Plaintiff multiple disputes and correspondence requesting that the inaccurate derogatory reporting be corrected.

4.     Defendants' violations include: failing to properly investigate Plaintiff's disputes and failing to maintain reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's credit files.  Through these failures, and by improperly reporting on Plaintiff's credit, Defendants have violated Plaintiff's rights under the FCRA.  Accordingly, Plaintiff seeks actual damages, attorney's fees and costs, and punitive damages for Defendants' willful violations of the FCRA.

## II.

### JURISDICTION AND VENUE

5.     The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b)(2).

## III.

### PARTIES

7.      Plaintiff THOMAS W. REDFORD ("Mr. Redford" or "Plaintiff") is a natural person and "consumer" as defined by § 1681a(c) of the FCRA.  Mr. Redford resides in the County of Henrico, Virginia, which falls within the Richmond Division of the Eastern District of Virginia.

8.      Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax") is a limited liability company formed in Georgia and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

9.      Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

10.     Equifax disburses consumer reports to third parties, under contract, for monetary compensation.

11.     Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is a corporation formed in Ohio and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

12.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

13.     Experian disburses consumer reports to third parties, under contract, for monetary compensation.

14.     Defendant TRANS UNION, LLC ("Trans Union") is a limited liability company formed in Delaware and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

15.     Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

16.     Trans Union disburses consumer reports to third parties, under contract, for monetary compensation.

## IV.

### FACTS

**A.      Background**

17.     On or about June 16, 2006, Plaintiff executed a deed of trust, which encumbers Plaintiff's real estate located in Henrico County, Virginia, commonly known as 4829 Suecla Drive, Richmond, VA 23231 (the "Real Property"), and secures payment of a promissory note in the principal amount of $120,000.00 (the "Seterus Mortgage").

18.     On or about May 17, 2007, Plaintiff executed another deed of trust, which also encumbered Plaintiff's Real Property, and secured payment of a home equity line of credit promissory note in the principal amount of $31,000.00 (the "SunTrust HELOC").

19.     On or about March 20, 2012, Plaintiff opened a Kay Jewelers credit account with Sterling Jewelers, Inc., doing business as Kay Jewelers, to finance the purchase of certain jewelry (the "Kay Jewelers Credit Account").

20.     On January 17, 2014, Plaintiff filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the Eastern District of Virginia, Richmond Division, case no. 14-30245-KRH. Relief was ordered.

21.     At the time of the bankruptcy filing, the Seterus Mortgage, the SunTrust HELOC, and the Kay Jewelers Credit Account were all open.

22.     Among the debts included in his bankruptcy schedules filed with the bankruptcy court on January 17, 2014, Plaintiff listed the Seterus Mortgage and the SunTrust HELOC in "Schedule D – Creditors Holding Secured Claims" and the Kay Jewelers Credit Account in "Schedule F – Creditors Holding Unsecured Nonpriority Claims."

23.     On January 28, 2014, SunTrust Bank ("SunTrust"), filed in Plaintiff's bankruptcy case a proof of claim, which the court designated as Claim no. 1-1, asserting a secured claim in the amount of $17,461.28 based on the balance due on the SunTrust HELOC.  SunTrust's proof of claim no. 1-1 set forth an arrearage amount owed of $549.88 owed as of the date of Plaintiff's bankruptcy filing.

24.     On May 23, 2014, Sterling Jewelers Inc., doing business as Kay Jewelers ("Kay Jewelers"), filed in Plaintiff's bankruptcy case a proof of claim, which the court designated as Claim no. 23-1, asserting a secured claim in the amount of $8,767.30 based on the balance due on the Kay Jewelers Credit Account.

25.     On June 4, 2014, Seterus, Inc. ("Seterus") filed in Plaintiff's bankruptcy case a proof of claim, which the court designated as Claim no. 26-1, asserting a secured claim in the

amount of $105,876.07 based on the balance due on the Seterus Mortgage.  Seterus's proof of claim no. 26-1 set forth an arrearage amount owed of $922.01 owed as of the date of Plaintiff's bankruptcy filing.

26.     On January 23, 2014, Plaintiff filed a Chapter 13 Plan and Related Motions (the "First Plan").  The First Plan was confirmed on April 3, 2014.

27.     On July 7, 2016, Plaintiff filed a Modified Chapter 13 Plan and Related Motions (the "Amended Plan"), the terms of which provided for Plaintiff to "cure and maintain" payments on the Seterus Mortgage and the SunTrust HELOC, in accordance with 11 U.S.C. § 1322(b)(5) ("[the plan may] . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due...").

28.     The loan documents attached to Seterus's proof of claim no. 26-1 and SunTrust's proof of claim no. 1-1 confirmed that the date on which the last payment was due on both the Seterus Mortgage and the SunTrust HELOC was after the date on which the final payment was due under the Amended Plan.

29.     The Amended Plan further provided for Plaintiff to pay the Kay Jewelers Credit Account, as modified in the Amended Plan.  Specifically, Plaintiff proposed to modify Kay Jewelers' secured claim, in accordance with 11 U.S.C. §§ 506 and 1322(b)(2), and to satisfy its secured claim by repaying the replacement value of the collateral, $5,000.00,  plus interest calculated at a rate of 4.25%. The remaining balance of the Kay Jewelers Credit Account ($3,767.30) was treated as a non-priority unsecured claim to be paid pro rata from any distribution remaining after disbursement to allowed secured and priority claim holders. The

Amended Plan estimated that nonpriority unsecured creditors would receive a 2% dividend on amounts they claimed in the bankruptcy, with the remaining amount of the unsecured debts to be discharged.

30.     On or about July 7, 2016, Plaintiff served a copy of the Amended plan on all creditors and parties in interest, including Seterus, SunTrust, and Kay Jewelers.

31.     On August 22, 2016, without objection from any creditor or the trustee of Plaintiff's Chapter 13 bankruptcy estate (the "Trustee"), the bankruptcy court entered an order confirming the Amended Plan.

32.     On February 7, 2019, the Trustee filed a report with the court, confirming Plaintiff had completed all payments required under the Amended Plan. The Trustee's report also confirmed that the respective arrearage claims on the Seterus Mortgage and SunTrust HELOC were paid in full, and that $5,098.25 was paid to Kay Jewelers to satisfy the secured portion of its claim based on the Kay Jewelers Credit Account, and $145.91—a dividend of approximately 3.87%—was paid to Kay Jewelers to satisfy the unsecured portion of its claim based on the Kay Jewelers Credit Account.

33.     On February 14, 2019, as required under Fed. R. Bankr. P. 3002.1, SunTrust filed a Response to Notice of Final Cure Payment with the court, confirming that it received the full amount required to cure the prepetition default claimed in its proof of claim no. 1-1, and that the Plaintiff was current on all payments owed on the SunTrust HELOC.

34.     On February 21, 2019, as required under Fed. R. Bankr. P. 3002.1, Seterus filed a Response to Notice of Final Cure Payment with the court, confirming that it received the full amount required to cure the prepetition default claimed in its proof of claim no. 26-1, and that the Plaintiff was current on all payments owed on the Seterus Mortgage.

35.     On April 16, 2019, the bankruptcy court entered a discharge in Plaintiff's bankruptcy case, pursuant to 11 U.S.C. § 1328 of the Bankruptcy Code (the "Discharge").

36.     Because the unpaid portion of the Kay Jewelers Credit Account was a nonpriority unsecured claim, that debt was included in Plaintiff's Discharge.

37.     Because the Seterus Mortgage and SunTrust HELOC were each provided for under the "cure and maintain" provision of the Bankruptcy Code, 11 U.S.C. § 1322(b)(5), Plaintiff's Seterus Mortgage and SunTrust HELOC were both specifically excepted from the Discharge, pursuant to 11 U.S.C. § 1328(a)(1).

38.     In or around March 2019, Seterus transferred the servicing of the Seterus Mortgage to Nationstar Mortgage ("Nationstar").  Nationstar subsequently changed its name to Mr. Cooper.

39.     In or around November 2020, Mr. Cooper transferred the servicing of the Seterus Mortgage to Select Portfolio Servicing.

40.     Beginning as soon as he filed his bankruptcy case, and continuing to this day—a period of over seven years—Plaintiff made timely ongoing monthly payments towards the Seterus Mortgage. Seterus and the subsequent loan servicers accepted all of Plaintiff's payments, and applied them to the Seterus Mortgage.

41.     Similarly, beginning as soon as he filed his bankruptcy case, Plaintiff made timely ongoing monthly payments to SunTrust to pay the SunTrust HELOC. SunTrust accepted all of Plaintiff's payments, and applied them to the SunTrust HELOC until the balance of the credit line was paid in full in or around September 2019.

42.     After receiving his Discharge, Plaintiff hoped and believed his credit problems were behind him and that, based on his faithful payment and completion of all of his obligations

under the Amended Plan, he would be allowed to receive a fresh start from his indebtedness and rebuild his credit.

**B.      Inaccurate and Derogatory Reporting by Equifax, Experian and Trans Union**

43.      On or about May 19, 2019, following the entry of his bankruptcy discharge, Plaintiff applied for credit, in the form of a Lowe's card, with Synchrony Bank. Upon information and belief, in connection with Plaintiff's credit application, Experian and Trans Union each furnished to Synchrony Bank a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

44.      On or about September 22, 2019, Plaintiff applied for credit, in the form of a Bass Pro CLUB card, with Capital One. Upon information and belief, in connection with Plaintiff's credit application, Equifax, Experian, and Trans Union each furnished to Capital One a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

45.      Capital One approved Plaintiff's September 22, 2019 credit application, but, upon information and belief, because of the inaccurate and derogatory information being reported on Plaintiff's consumer reports furnished by Equifax, Experian, and Trans Union, Capital One limited the credit line it extended to Plaintiff to $1,000.00.  On two subsequent occasions, both in 2020, Plaintiff requested an increase to the credit line, but Capital One has not approved Plaintiff's requests.

46.      On or about October 20, 2019, Plaintiff applied for credit with Citizens Bank. Upon information and belief, in connection with Plaintiff's credit application, Equifax furnished to Citizens Bank a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

47.    In or around November 2019, Plaintiff requested copies of his credit disclosures from Equifax, Experian and Trans Union.  Plaintiff subsequently received a credit disclosure from Equifax dated November 26, 2019 and a credit disclosure from Trans Union dated November 27, 2019, and he eventually obtained a credit disclosure from Experian dated January 14, 2020 (collectively, the "First Set of Disclosures").

48.    The First Set of Disclosures revealed that Equifax, Experian, and Trans Union were each reporting inaccurate derogatory information regarding accounts on Plaintiff's credit.

49.    Specifically, the First Set of Disclosures revealed that Equifax was inaccurately reporting the status of the SunTrust HELOC as "Included in Wage Earner Plan", with a date of first delinquency of December 2013, a date delinquency first reported of January 2014, comments referring to "bankruptcy chapter 13" and "bankruptcy completed", several delinquent payment statuses from March 2013 through November 2013, a date of last payment of January 2014, and no record of payments made thereafter.  Equifax was also inaccurately reporting the status of the Kay Jewelers Credit Account as "charge off", with a charge off amount of $8,767, comments referring to "charged off account", a date of first delinquency of January 2014, a date delinquency first reported of December 2017, and several delinquent payment statuses between July 2013 and November 2017, including several "charge off" statuses.

50.    Equifax's reporting was inaccurate with respect to the SunTrust HELOC because Plaintiff did not receive a discharge of the SunTrust HELOC (or *any* mortgage) through his bankruptcy and, thus, that account was not "included in wage earner plan", nor was it accurate to report any date of first delinquency or date delinquency first reported about the SunTrust HELOC because the account was not delinquent as of the date of the disclosure, and, in fact, the balance had been paid in full.  Further, both the date of last payment and the payment history

failed to accurately reflect that Plaintiff continued to make timely payments to SunTrust from the date of Plaintiff's bankruptcy filing until the balance of the SunTrust HELOC was paid in full in September 2019.  With respect to the Kay Jewelers Credit Account, Equifax's reporting of any references to a charge off or charge off balances owed was inaccurate because that account *was* included and discharged in Plaintiff's bankruptcy case, and should have been reported accordingly.  Further, the date of first delinquency reported was inaccurate because the date that the account first became delinquent was prior to January 2014.  Finally, it was improper for Equifax to report a date major delinquency first reported or any delinquent payment statuses that occurred after the filing of Plaintiff's bankruptcy case.

51.     The First Set of Disclosures revealed that Experian was inaccurately reporting the status of the Seterus Mortgage as "Discharged through Bankruptcy Chapter 13", with no mention of any balance due, no indication that it had been transferred to Nationstar, and no record of payments made since March 2014. Experian was also inaccurately reporting the status of the SunTrust HELOC as "Discharged through Bankruptcy Chapter 13/Never late", with no mention of any balance, and no record of payments made since February 2013. With respect to the Kay Jewelers Credit Account, Experian was inaccurately reporting the status as "Closed. $8,767 written off.", with several delinquent payment statuses between July 2013 and November 2017, including multiple "charge off" statuses.

52.     Experian's reporting was inaccurate because Plaintiff did not receive a discharge of the either the Seterus Mortgage or the SunTrust HELOC (or *any* mortgage) through his bankruptcy and, thus, neither account was "discharged through bankruptcy chapter 13". Further, Experian failed to list accurate balances on both accounts, and neither of the payment histories for these accounts accurately reflected that Plaintiff continued to make timely payments to both

11

Seterus and SunTrust well after the dates of last payments set forth in the disclosure. It also failed to report that the Seterus Mortgage had been transferred to NationStar. With respect to the Kay Jewelers Credit Account, Experian's reporting a status indicating funds were written off was inaccurate because that account *was* included and discharged in Plaintiff's bankruptcy case, and should have been reported accordingly. It was also improper for Experian to report any delinquent payment statuses that occurred after the filing of Plaintiff's bankruptcy case.

53.     The First Set of Disclosures revealed that Trans Union was inaccurately reporting the status of the Seterus Mortgage as "Account Included in Bankruptcy", with remarks of "Chapter 13 Bankruptcy", no mention of any balance due, no indication that it had been transferred to Nationstar, a date closed of October 5, 2014, a date last payment made of October 2, 2014, and, in the account history section, no record of payments made since February 2014. Trans Union was also inaccurately reporting the status of the SunTrust HELOC as "Account Included in Bankruptcy", with remarks of "Chapter 13 Bankruptcy; Credit Line Suspended", no mention of any balance due, a date last payment made of January 31, 2014, and, in the account history section, no record of payments made since February 2013. Finally, Trans Union was inaccurately reporting the status of the Kay Jewelers Credit Account as "Charged Off", with comments of "Maximum Delinquency of 60 days in 03/2014" and remarks of "Unpaid Balance Charged Off", an original charge off amount of $8,767, and several delinquent payment statuses between July 2013 and November 2017, including multiple "charge off" statuses.

54.     Trans Union's reporting was inaccurate because Plaintiff did not receive a discharge of either the Seterus Mortgage or the SunTrust HELOC (or *any* mortgage) through his bankruptcy and, thus, neither account was "included in bankruptcy", and the Seterus Mortgage was not closed in October 2014. Further, Trans Union failed to list accurate balances on both

accounts, and neither of the payment histories for these accounts accurately reflected that Plaintiff continued to make timely payments to both Seterus and SunTrust well after the dates of last payments set forth in the disclosure. It also failed to report that the Seterus Mortgage had been transferred to NationStar. With respect to the Kay Jewelers Credit Account, Trans Union's reporting any references to a charge off or charge off balances owed was inaccurate because that account *was* included and discharged in Plaintiff's bankruptcy case, and should have been reported accordingly. It was also improper for Trans Union to report any delinquent payment statuses that occurred after the filing of Plaintiff's bankruptcy case.

**C.    Plaintiff's January 2020 Dispute Letters**

55.    On February 1, 2020, Plaintiff sent letters, each dated January 30, 2020, via certified mail to Equifax, Experian, and Trans Union, respectively, to dispute the inaccurate and derogatory information reported in the First Set of Disclosures (collectively, the "January 2020 Dispute Letters").

56.    In his January 2020 Dispute Letter to Equifax, Plaintiff disputed the inaccurate and derogatory information Equifax was reporting regarding the SunTrust HELOC and the Kay Jewelers Credit Account. Specifically, Plaintiff asserted that the SunTrust HELOC was not included in the bankruptcy Discharge, and that he continued to make direct payments on that account during and after his bankruptcy, as provided for in his confirmed Amended Plan. Plaintiff further advised Equifax that the Kay Jewelers Credit Account *was* included and discharged in his bankruptcy case, and therefore, he asserted that the other derogatory information being reported about the account should be removed from his credit. Plaintiff requested that Equifax correct the inaccurate and derogatory reporting with respect to both accounts, or delete them from his credit file.

57.     In his January 2020 Dispute Letter to Experian, Plaintiff disputed the inaccurate and derogatory information Experian was reporting regarding the Seterus Mortgage, the SunTrust HELOC, and the Kay Jewelers Credit Account. Specifically, Plaintiff asserted that neither the Seterus Mortgage nor the SunTrust HELOC were included in the bankruptcy Discharge, and that he continued to make direct payments on both of those accounts during and after his bankruptcy, as provided for in his confirmed Amended Plan. Plaintiff further advised that the Kay Jewelers Credit Account *was* included and discharged in his bankruptcy case, and therefore, he asserted that other derogatory information being reported about the account should be removed from his credit. Plaintiff requested that Experian correct the inaccurate and derogatory reporting with respect to all three accounts, or delete them from his credit file.

58.     In his January 2020 Dispute Letter to Trans Union, Plaintiff disputed the inaccurate and derogatory information Trans Union was reporting regarding the Seterus Mortgage, the SunTrust HELOC, and the Kay Jewelers Credit Account. Specifically, Plaintiff asserted that neither the Seterus Mortgage nor the SunTrust HELOC were included in the bankruptcy Discharge, and that he continued to make direct payments on both of those accounts during and after his bankruptcy, as provided for in his confirmed Amended Plan. Plaintiff further advised that the Kay Jewelers Credit Account *was* included and discharged in his bankruptcy case, and therefore, he asserted that the other derogatory information being reported about the account should be removed from his credit. Plaintiff requested that Trans Union correct the inaccurate and derogatory reporting with respect to all three accounts, or delete them from his credit file.

**D.      Responses to Plaintiff's January 2020 Dispute Letters**

59.      On February 4, 2020, Equifax received Plaintiff's January 2020 Dispute Letter. On February 18, 2020, Experian received Plaintiff's January 2020 Dispute Letter. On February 3, 2020, Trans Union received Plaintiff's January 2020 Dispute Letter.

60.      In response to Plaintiff's January 2020 Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated February 20, 2020.

61.      In its February 20, 2020 reinvestigation results, Equifax failed to address or correct all of the inaccurate information that Plaintiff disputed with respect to both the SunTrust HELOC and the Kay Jewelers Credit Account. Specifically, Equifax advised Plaintiff it verified as "accurate" some of the information about those accounts that Plaintiff disputed, and updated other information. Equifax's assertion about the accuracy of the disputed information was incorrect. With respect to the SunTrust HELOC, Equifax was still inaccurately reporting a status of "Included in Wage Earner Plan", a date of first delinquency of December 2013, a date delinquency first reported of January 2014, comments referring to "bankruptcy chapter 13", a date of last payment of January 2014, and Equifax was still failing to report all of Plaintiff's monthly payments made towards the SunTrust HELOC after the bankruptcy filing. With respect to the Kay Jewelers Credit Account, Equifax failed to update the account to reflect it was discharged in bankruptcy. Instead, Equifax merely updated the charge off balance to $0 and deleted the post-bankruptcy delinquent payment statuses, but it continued to inaccurately report the account status as "charge off", along with comments referencing "charged off account", a date of first delinquency of January 2014, and a date delinquency first reported of December 2017.

62.     In response to the Plaintiff's January 2020 Dispute Letter, Experian mailed to Plaintiff its reinvestigation results, dated March 11, 2020.

63.     In its March 11, 2020 reinvestigation results, Experian failed to correct the inaccurate information that Plaintiff disputed with respect to the Seterus Mortgage and SunTrust HELOC. In its reinvestigation results, Experian advised Plaintiff that it updated some of the information reported about those two accounts, but that it verified as accurate the information that Plaintiff disputed. Experian's assertion about the accuracy of the disputed information was incorrect. Instead of correcting the status of the accounts to reflect that they were not included in or otherwise affected by Plaintiff's bankruptcy, Experian continued to inaccurately report the SunTrust HELOC with a status of "Discharged through Bankruptcy Chapter 13/Never late" and the Seterus Mortgage with a slightly adjusted, but still inaccurate status of "Petition for Chapter 13 Bankruptcy". Additionally, Experian was still failing to report the account balances as well as all of Plaintiff's monthly payments made on both accounts. Finally, Experian continued to fail to report that the Seterus Mortgage had been transferred to NationStar.

64.     Experian's March 11, 2020 reinvestigation results also revealed that Experian failed to correct the inaccurate information that Plaintiff disputed with respect to the Kay Jewelers Credit Account. In its reinvestigation results, Experian advised Plaintiff that it verified as accurate the information reported about that account, and therefore the reporting in that trade line was not changed. Experian's assertion about the accuracy of the disputed information was incorrect. Experian failed to update the account to reflect it was discharged in bankruptcy. Instead, Experian continued to inaccurately report the account status as "Closed. $8,767 written off.", along with several delinquent payment statuses between July 2013 and November 2017, including multiple "charge off" statuses.

65.     In response to the Plaintiff's January 2020 Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated February 6, 2020.

66.     In its February 6, 2020 reinvestigation results, Trans Union advised Plaintiff that it deleted the Kay Jewelers Credit Account from Plaintiff's credit file. However, Trans Union's February 6, 2020 reinvestigation results failed to address or include any reference to Plaintiff's dispute regarding the Seterus Mortgage or the SunTrust HELOC.

**E.     Plaintiff's April 2020 Dispute Letters**

67.     On April 10, 2020, Plaintiff sent a second set of letters, all dated April 9, 2020, along with supporting documentation, via certified mail to Equifax, Experian, and Trans Union, respectively, to dispute the inaccurate and derogatory information still being reported on his credit (collectively, the "April 2020 Dispute Letters").

68.     In his April 2020 Dispute Letter to Equifax, Plaintiff again disputed the inaccurate and derogatory information Equifax was reporting regarding both the SunTrust HELOC and the Kay Jewelers Credit Account. Specifically, Plaintiff asserted again that the SunTrust HELOC was not included in the bankruptcy Discharge, and that he continued to make direct payments on that account during and after his bankruptcy, as provided for in his confirmed Amended Plan. Plaintiff also advised Equifax again that the Kay Jewelers Credit Account *was* included and discharged in his bankruptcy case, and therefore, he asserted that the other derogatory information being reported regarding a charge off status on that account should be removed from his credit. Plaintiff requested again that Equifax correct the inaccurate and derogatory reporting with respect to both accounts, or delete them from his credit file.

69.     In his April 2020 Dispute Letter to Experian, Plaintiff  disputed the inaccurate and derogatory information Experian continued to report regarding the Seterus Mortgage, the

SunTrust HELOC, and the Kay Jewelers Credit Account. Specifically, Plaintiff asserted again that the Seterus Mortgage and SunTrust HELOC were not included in the bankruptcy Discharge, and therefore, Experian should not be reporting account statuses or other information about those accounts that indicates they were discharged or otherwise affected by the bankruptcy. Plaintiff also asserted again that he continued to make direct payments on those accounts during and after his bankruptcy, as provided for in his confirmed Amended Plan. Plaintiff also pointed out in his April 2020 Dispute Letter to Experian that Seterus transferred the servicing of the Seterus Mortgage to Nationstar sometime after Plaintiff's bankruptcy, and that Nationstar was reporting a mortgage elsewhere on Plaintiff's credit report with a positive status, including all payments Plaintiff had tendered after Seterus transferred servicing. Finally, Plaintiff advised again that the Kay Jewelers Credit Account *was* included and discharged in his bankruptcy case, and therefore, he asserted that the other derogatory information being reported about the account, including references to amounts charged off or written off, should be removed from his credit. Plaintiff requested again that Experian correct the inaccurate and derogatory reporting with respect to all three accounts, or delete them from his credit file.

70.     In his April 2020 Dispute Letter to Trans Union, Plaintiff again disputed the inaccurate and derogatory information Trans Union continued to report regarding the Seterus Mortgage and the SunTrust HELOC. Specifically, Plaintiff asserted again that neither of those accounts was included in the bankruptcy Discharge, and therefore, Trans Union should not be reporting account statuses or other information about those accounts that indicates they were "included in bankruptcy". Plaintiff also asserted again that he continued to make direct payments on those accounts during and after his bankruptcy, as provided for in his confirmed Amended Plan. Finally, Plaintiff pointed out in his April 2020 Dispute Letter to Trans Union that Seterus

transferred the servicing of the Seterus Mortgage to Nationstar sometime after Plaintiff's

bankruptcy, and that Nationstar was reporting the Seterus Mortgage elsewhere on Plaintiff's

credit report with a positive status, including all payments Plaintiff had tendered after Seterus

transferred servicing. Plaintiff requested again that Trans Union correct the inaccurate and

derogatory reporting with respect to the Seterus Mortgage and SunTrust HELOC, or delete them

from his credit file.

**F.      Responses to Plaintiff's April 2020 Dispute Letters**

71.      On April 17, 2020, Equifax received Plaintiff's April 2020 Dispute Letter. On

April 22, 2020, Experian received Plaintiff's April 2020 Dispute Letter. On April 13, 2020,

Trans Union received Plaintiff's April 2020 Dispute Letter.

72.      In response to Plaintiff's April 2020 Dispute Letter, Equifax mailed to Plaintiff its

reinvestigation results, dated May 3, 2020.

73.      In its May 3, 2020 reinvestigation results, Equifax failed again to correct the

inaccurate information that Plaintiff disputed with respect to the SunTrust HELOC. Specifically,

the reinvestigation results revealed Equifax was continuing to inaccurately report a status of

"Included in Wage Earner Plan", a date of first delinquency of December 2013, a date

delinquency first reported of January 2014, comments referring to "bankruptcy chapter 13" and

"bankruptcy completed", a date of last payment of January 2014, and Equifax was still failing to

report all of Plaintiff's monthly payments made towards the SunTrust HELOC after the

bankruptcy filing.

74.      Equifax's May 3, 2020 reinvestigation results also indicated that Equifax updated

its reporting with respect to the Kay Jewelers Credit Account to indicate the account was

included in bankruptcy. However, Equifax did not include in the reinvestigation results the

updated tradeline that would have allowed Plaintiff to review all of the updated information being reported about the Kay Jewelers Credit Account.

75.     Finally, Equifax's May 3, 2020 reinvestigation results also revealed that Equifax researched and updated several tradelines on Plaintiff's credit related to personal information, public information, and accounts that Plaintiff did not previously dispute, including Plaintiff's current address, bankruptcy filing, and accounts with Syncb/Lowes, Harley Davidson Financial, WF/Preferred Cust Acct, and Wells Fargo Bank. Even though Plaintiff did not dispute information being reported about either the WF/Preferred Cust Acct or Wells Fargo Bank accounts, Equifax updated both accounts with an inaccurate comment, indicating "Consumer Disputes After Resolution". Equifax also advised Plaintiff in its dispute results that it researched 20 other "disputed accounts" that were not appearing on Plaintiff's credit file. Plaintiff did not previously dispute information about any of those 20 accounts in any of his previous letters to Equifax.

76.     In response to the Plaintiff's April 2020 Dispute Letter, Experian mailed to Plaintiff its reinvestigation results, dated May 12, 2020.

77.     In its May 12, 2020 reinvestigation results, Experian failed again to correct the inaccurate information that Plaintiff disputed with respect to the Seterus Mortgage and SunTrust HELOC. In its reinvestigation results, Experian advised Plaintiff that it updated some of the information reported about those two accounts, but that it verified as accurate the information that Plaintiff disputed. Experian's assertion about the accuracy of the disputed information was incorrect. Instead of correcting the status of the accounts to reflect that they were not included or otherwise affected by Plaintiff's bankruptcy, Experian continued to inaccurately report the SunTrust HELOC with a status of "Discharged through Bankruptcy Chapter 13/Never late" and

the Seterus Mortgage with a status of "Petition for Chapter 13 Bankruptcy". Additionally, its reinvestigation results revealed that Experian was still failing to report the account balances and all of Plaintiff's monthly payments that he made towards both accounts during and after his bankruptcy case.

78.     Experian's May 12, 2020 reinvestigation results also revealed that Experian failed again to correct the inaccurate information that Plaintiff disputed with respect to the Kay Jewelers Credit Account. In its reinvestigation results, Experian advised Plaintiff that it verified as accurate the information reported about that account, and therefore the reporting in that tradeline was not changed. Experian's assertion about the accuracy of the disputed information was incorrect. Experian failed to update the account to reflect it was discharged in bankruptcy. Instead, Experian continued to inaccurately report the account status as "Closed. $8,767 written off.", along with several delinquent payment statuses between July 2013 and November 2017, including multiple "charge off" statuses.

79.     In response to the Plaintiff's April 2020 Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated May 9, 2020.

80.     In its May 9, 2020 reinvestigation results, Trans Union failed to correct the inaccurate information that Plaintiff disputed with respect to the Seterus Mortgage and SunTrust HELOC. Even though it advised Plaintiff that certain information was "updated", Trans Union was still inaccurately reporting the status of both accounts as "Account Included in Bankruptcy". In addition to reporting an inaccurate account status about both accounts, Trans Union also continued to inaccurately report the Seterus Mortgage with remarks of "Chapter 13 Bankruptcy", no mention of any balance due, a date last payment made of October 2, 2014, and a date closed of October 5, 2014. With respect to the SunTrust HELOC, Trans Union continued to

inaccurately report remarks of "Chapter 13 Bankruptcy; Credit Line Suspended", a date last payment made of January 31, 2014, a date closed of January 31, 2014, and no mention of any balance due.

**G.    Plaintiff's June 2020 Dispute Letters**

81.    On June 9, 2020, Plaintiff sent a third set of letters, each dated June 9, 2020, and documentation supporting his position, via certified mail to Equifax, Experian, and Trans Union, respectively, to dispute the inaccurate and derogatory information still being reported on his credit (collectively, the "June 2020 Dispute Letters").

82.    In his June 2020 Dispute Letter to Equifax, Plaintiff again disputed the inaccurate and derogatory information Equifax was reporting regarding both the SunTrust HELOC and the Kay Jewelers Credit Account. Specifically, Plaintiff asserted again that the SunTrust HELOC was not included in the bankruptcy Discharge, and that he continued to make direct payments on that account during and after his bankruptcy, as provided for in his confirmed Amended Plan. With respect to the Kay Jewelers Credit Account, Plaintiff acknowledged that Equifax indicated in its May 3, 2020 reinvestigation results that it updated the status of the account to reflect that it was included in included Plaintiff's bankruptcy case, but because Equifax did not include the updated tradeline, Plaintiff advised Equifax he was unable to verify the updated reporting was accurate.  Therefore, Plaintiff requested again that Equifax correct any inaccurate and derogatory reporting with respect to both accounts, or delete them from his credit file.

83.    In his June 2020 Dispute Letter to Experian, Plaintiff again disputed the inaccurate and derogatory information Experian continued to report regarding the Seterus Mortgage, the SunTrust HELOC, and the Kay Jewelers Credit Account. Specifically, Plaintiff asserted again that the Seterus Mortgage and SunTrust HELOC were not included in the

bankruptcy Discharge, and therefore, Experian should not be reporting account statuses or other information about those accounts that indicates they were discharged or otherwise affected by the bankruptcy. Plaintiff also asserted again that he continued to make direct payments on those accounts during and after his bankruptcy, as provided for in his confirmed Amended Plan. Plaintiff also pointed out again in his June 2020 Dispute Letter to Experian that Seterus transferred the servicing of the Seterus Mortgage to Nationstar sometime after Plaintiff's bankruptcy, and that Nationstar was reporting the Seterus Mortgage elsewhere on Plaintiff's credit report with a positive status, including all payments Plaintiff had tendered after Seterus transferred servicing. Finally, Plaintiff advised Experian again that the Kay Jewelers Credit Account *was* included and discharged in his bankruptcy case, and therefore, he asserted that other derogatory information being reported about the account, including references to amounts charged off or written off, should be removed from his credit. Plaintiff requested again that Experian correct the inaccurate and derogatory reporting with respect to all three accounts, or delete them from his credit file.

84.     In his June 2020 Dispute Letter to Trans Union, Plaintiff again disputed the inaccurate and derogatory information Trans Union continued to report regarding the Seterus Mortgage and the SunTrust HELOC. Specifically, Plaintiff asserted again that neither of those accounts was included in the bankruptcy Discharge, and therefore, Trans Union should not be reporting account statuses or other information about those accounts that indicates they were "included in bankruptcy". Plaintiff also asserted again that he continued to make direct payments on those accounts during and after his bankruptcy, as provided for in his confirmed Amended Plan. Finally, Plaintiff again pointed out in his April 2020 Dispute Letter to Trans Union that Seterus transferred the servicing of the Seterus Mortgage to Nationstar sometime after Plaintiff's

bankruptcy, and that Nationstar was reporting the Seterus Mortgage elsewhere on Plaintiff's credit report with a positive status, including all payments Plaintiff tendered post-service transfer. Plaintiff requested again that Trans Union correct the inaccurate and derogatory reporting with respect to the Seterus Mortgage and SunTrust HELOC, or delete them from his credit file.

85.     In June 2020, in addition to sending the June 2020 Dispute Letters to Equifax, Experian, and Trans Union, Plaintiff also approached Bass Pro Shops, located in Ashland, VA, seeking to purchase a bass boat.

86.     On or about June 4, 2020, in connection with his request to finance the purchase of a bass boat, Plaintiff submitted a credit application to Bass Pro Shops, who forwarded his credit application to White River Financial Services LLC. White River Financial Services LLC denied Plaintiff's credit application. Upon information and belief, White River Financial Services LLC relied upon information provided by Experian in making its decision to deny the extension of credit to Plaintiff.

87.     In order to further explore finance options that might be available to Plaintiff, Bass Pro Shops also approached Merrick Bank regarding Plaintiff's credit application. On or about June 5, 2020, Experian furnished a consumer report concerning Plaintiff to Merrick Bank.

88.     In a letter dated June 8, 2020, Merrick Bank advised Plaintiff that his credit application was denied, and that the decision to deny his credit application was based in whole or in part on derogatory information appearing in the consumer report concerning Plaintiff that Experian furnished to Merrick Bank on June 5, 2020.

89.     After his June 2020 credit application was denied, Plaintiff became discouraged from continuing to apply for financing for a boat or any other credit opportunities because he

feared future credit applications would be denied as well based on inaccurate and derogatory information being reported on his credit.

**H.      Responses to Plaintiff's June 2020 Dispute Letters**

90.     On June 12, 2020, Equifax received Plaintiff's June 2020 Dispute Letter. On June 12, 2020, Experian received Plaintiff's June 2020 Dispute Letter. On June 11, 2020, Trans Union received Plaintiff's June 2020 Dispute Letter.

91.     In response to Plaintiff's June 2020 Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated June 16, 2020.

92.     In its June 16, 2020 reinvestigation results, Equifax advised Plaintiff that the Kay Jewelers Credit Account was no longer being reported on Plaintiff's credit file, but Equifax failed again to correct all of the inaccurate information that Plaintiff disputed regarding the SunTrust HELOC. Specifically, with respect to the SunTrust HELOC, Equifax suppressed the account status, the date of first delinquency, the date the delinquency was first reported, and all "additional information" regarding the SunTrust HELOC, but Equifax continued to report that the last payment on the account was made in January 2014. Further, Equifax was still failing to report all of Plaintiff's monthly payments made towards the SunTrust HELOC during and after Plaintiff's bankruptcy case.

93.     In response to the Plaintiff's June 2020 Dispute Letter, Experian mailed to Plaintiff its reinvestigation results, dated July 9, 2020.

94.     In its July 9, 2020 reinvestigation results, Experian failed again to correct the inaccurate information that Plaintiff disputed with respect to the Seterus Mortgage and SunTrust HELOC. In its reinvestigation results, Experian advised Plaintiff that it updated some of the information reported about those two accounts, and that, with respect to the Seterus Mortgage,

the updates "may" relate to the information Plaintiff disputed, but with respect to the SunTrust HELOC, Experian advised Plaintiff it verified as accurate the information that Plaintiff disputed. Experian's assertion about the accuracy of the disputed information was incorrect, and any updates it made to the information being reported about the Seterus Mortgage and SunTrust HELOC failed to properly address Plaintiff's disputes or resolve the inaccurate information being reported. Instead of correcting the status of the accounts to reflect that they were not included or otherwise affected by Plaintiff's bankruptcy, Experian continued to inaccurately report the SunTrust HELOC with a status of "Discharged through Bankruptcy Chapter 13/Never late" and the Seterus Mortgage with a status of "Petition for Chapter 13 Bankruptcy". Additionally, its reinvestigation results revealed that Experian was still failing to report the account balances and all of Plaintiff's monthly payments that he made towards both accounts during and after his bankruptcy case.

95.    Experian's July 9, 2020 reinvestigation results also revealed that Experian failed again to correct the inaccurate information that Plaintiff disputed with respect to the Kay Jewelers Credit Account. In its reinvestigation results, Experian advised Plaintiff that it verified as accurate the information reported about that account, and therefore the reporting in that trade line was not changed. Experian's assertion about the accuracy of the disputed information was incorrect. Experian failed to update the account to reflect it was discharged in bankruptcy. Instead, Experian continued to inaccurately report the account status as "Closed. $8,767 written off.", along with several delinquent payment statuses between July 2013 and November 2017, including multiple "charge off" statuses.

96.    Finally, in its July 9, 2020 reinvestigation results, Experian included a comment for the first time in Plaintiff's WFF PLL account tradeline, indicating "Completed Investigation

of FCRA dispute-consumer disagrees." The information in the comment was inaccurate because Plaintiff never submitted a dispute to Experian or any other credit reporting agency regarding the WFF PLL account.

97.     In response to the Plaintiff's June 2020 Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated June 12, 2020.

98.     In its June 12, 2020 reinvestigation results, Trans Union advised Plaintiff that it deleted the Seterus Mortgage and SunTrust HELOC from Plaintiff's credit file.

99.     In or around August 2020, Plaintiff obtained from Equifax, Experian and Trans Union updated copies of his credit disclosures, each of which was dated August 25, 2020 (collectively, the "Second Set of Disclosures").

100.     The Second Set of Disclosures revealed that Equifax was continuing to report inaccurate derogatory information on Plaintiff's credit. Specifically, with respect to the SunTrust HELOC, Equifax was still inaccurately reporting that the last payment on the account was made in January 2014, and Equifax was still failing to report all of Plaintiff's monthly payments made towards the SunTrust HELOC during and after Plaintiff's bankruptcy case. Also, instead of reporting the accurate account status of "Pays as Agreed", Equifax was still suppressing its reporting of the account status of the SunTrust HELOC. Finally, with respect to the WF/Preferred Cust Acct and Wells Fargo Bank account tradelines, Equifax continued reporting an inaccurate comment, indicating "Consumer Disputes After Resolution", even though Plaintiff never disputed any information being reported about either of these accounts.

101.     The Second Set of Disclosures also revealed that Experian was continuing to report inaccurate derogatory information on Plaintiff's credit. Specifically, Experian was still inaccurately reporting the status of the SunTrust HELOC as "Discharged through Bankruptcy

Chapter 13/Never late" and the status of the Seterus Mortgage as "Petition for Chapter 13 Bankruptcy", and Experian was also still failing to report the account balances and all of Plaintiff's monthly payments that he made towards both of those accounts during and after his bankruptcy case. Additionally, with respect to the Kay Jewelers Credit Account, Experian was continuing to inaccurately report the account status as "Closed. $8,767 written off." and several delinquent payment statuses between July 2013 and November 2017, including multiple "charge off" statuses. Finally, Experian was also continuing to report the inaccurate comment in the WFF PLL account tradeline, indicating "Completed Investigation of FCRA dispute-consumer disagrees", even though Plaintiff never submitted a dispute to any credit reporting agency regarding that account.

102.   Finally, the Second Set of Disclosures confirmed that, sometime after receiving Plaintiff's June 2020 Dispute Letter, Trans Union finally deleted from Plaintiff's credit file all of the derogatory information that Plaintiff previously disputed in his January 2020 Dispute Letter, April 2020 Dispute Letter, and June 2020 Dispute Letter.

103.   In or around December 2020, Plaintiff obtained an updated copy of his credit disclosures from Equifax, dated December 27, 2020, and an updated copy of his credit disclosure from Experian, dated December 24, 2020 (collectively, the "Third Set of Disclosures").

104.   The Third Set of Disclosures revealed that sometime after Plaintiff obtained the Second Set of Disclosures, Equifax and Experian finally deleted from Plaintiff's credit file all of the derogatory information that Plaintiff previously disputed in his January 2020 Dispute Letter, April 2020 Dispute Letter, and June 2020 Dispute Letter. Upon information and belief, Equifax and Experian deleted the derogatory information from Plaintiff's credit file, not in response to any of Plaintiff's disputes but, instead, because 15 U.S.C. § 1681c(a) required them to delete

from Plaintiff's credit file the inaccurate derogatory information that antedated the report by more than seven years.

105.    The Third Set of Disclosures also revealed that, even though Equifax and Experian both deleted the previously disputed information from Plaintiff's credit file, both of them continued to inaccurately report comments in the tradeline related to Plaintiff's WF/Preferred account. Specifically, the comment reported by Equifax was "Consumer Disputes After Resolution", and the comment reported by Experian was "Completed investigation of FCRA dispute-consumer disagrees." Plaintiff never submitted any dispute to Equifax or Experian regarding information being reported about his WF/Preferred account.

106.    Equifax received all three of Plaintiff's dispute letters but, in the first instance, wholly and entirely failed to conduct the reinvestigations required by law with respect to the Kay Jewelers Credit Account, and, in all three instances, Equifax wholly and entirely failed to conduct the reinvestigations required by law with respect to the SunTrust HELOC. Instead, in each of those instances, Equifax merely "parroted" the information dictated to it by SunTrust and Kay Jewelers.

107.    Experian received all three of Plaintiff's dispute letters but, in each instance, wholly and entirely failed to conduct the reinvestigations required by law with respect to the Seterus Mortgage, SunTrust HELOC, and Kay Jewelers Credit Account. Instead, in each of those instances, Experian merely "parroted" the information dictated to it by Seterus, SunTrust, and Kay Jewelers.

108.    Trans Union received all three of Plaintiff's dispute letters but, in the first two instances, wholly and entirely failed to conduct the reinvestigations required by law with respect

to the Seterus Mortgage and SunTrust HELOC. Instead, in each of those instances, Trans Union merely "parroted" the information dictated to it by Seterus and SunTrust.

109.   Equifax, Experian, and Trans Union each had knowledge that they were reporting inaccurate information about at least one of Plaintiff's accounts, but deliberately chose to ignore this knowledge, and instead chose to permit the inaccurate reporting on Plaintiff's credit.

110.   Upon information and belief, Equifax, Experian, and Trans Union each published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information about the accounts disputed by Plaintiff.

111.   Through their violations of Plaintiff's rights under the FCRA, Equifax, Experian, and Trans Union have all caused damage to Plaintiff and continue to damage Plaintiff.

## V.
## CLAIMS FOR RELIEF

### COUNT ONE:
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b) (EQUIFAX, EXPERIAN, AND TRANS UNION)

112.   Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

113.   Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they each furnished and maintained concerning Plaintiff.

114.   As a result of Equifax, Experian, and Trans Union's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to, loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

115.    The violations by Equifax, Experian, and Trans Union were willful, rendering Equifax, Experian, and Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

116.    Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT TWO:
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a) (EQUIFAX, EXPERIAN, AND TRANS UNION)

117.    Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

118.    After Plaintiff disputed the inaccurate information in his respective credit reports, Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

119.    After Plaintiff disputed the inaccurate information, Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

120.    After Plaintiff disputed the inaccurate information, Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

121. As a result of Equifax, Experian, and Trans Union's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

122. The violations by Equifax, Experian, and Trans Union were willful, rendering Equifax, Experian, and Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

123. Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## VI.
## DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1) Award Plaintiff actual and punitive damages for violations of the FCRA by Equifax, Experian, and Trans Union;

(2) Award Plaintiff attorney's fees and costs under the FCRA;

(3) Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4) Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

**THOMAS W. REDFORD**

By:

/s/ Mark C. Leffler
Emily Connor Kennedy, VSB# 83889
Mark C. Leffler, VSB# 40712
Stephen F. Relyea, VSB# 77236
Boleman Law Firm, P.C.
2104 W. Laburnum Ave, Suite 201
Richmond, VA 23227
(804) 358-9900 – Telephone
(804) 358-8704 – Facsimile
Email: eckennedy@bolemanlaw.com
Email: mcleffler@bolemanlaw.com
Email: sfrelyea@bolemanlaw.com

*Counsel for Plaintiff*